**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **JANIS SHUMWAY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:21-cv-01059-STA-jay** |
| | ) | |
| **NEIL HOSPITALITY, INC. d/b/a** | ) | |
| **COLONIAL INN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**ORDER GRANTING MOTION TO DISMISS**

---

Before the Court is Defendant Colonial Inn's Motion to Dismiss (ECF No. 18) filed on July 29, 2021.  Plaintiff Janis Shumway has responded in opposition.  (ECF No. 21.)  For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

Plaintiff Janis Shumway alleges that Defendant Colonial Inn, a hotel in Camden, Tennessee, has failed to comply with the Americans with Disabilities Act ("ADA") guidelines, more particularly, 28 C.F.R. § 36.302(e)(1), a federal regulation promulgated by the Department of Justice.  That regulation imposes requirements upon places of public accommodation to ensure that disabled people have equal access to them.  Most relevant here, Section 36.302(e)(1)(ii) requires that places of lodging provide enough information through their reservation services for disabled individuals to determine whether the accommodations meet their accessibility needs. Plaintiff contends that Defendant's online reservations system, a collection of third-party reservations websites, is not compliant with Section 36.302(e)(1).  Specifically, Plaintiff states that

1

she viewed Defendant's reservations system and could not determine whether Defendant's hotel met her accessibility needs.  Plaintiff avers that she qualifies as an individual with disabilities as defined by the ADA and is therefore entitled to its protections.

In the Motion before the Court, Defendant argues that Plaintiff's Amended Complaint (ECF No. 17) should be dismissed for lack of standing.  Defendant states that Plaintiff has not established an injury in fact because she has not suffered a concrete harm, irrespective of any statutory or regulatory violations committed by Defendant.  As a response, Plaintiff asserts that she has experienced informational deprivation.  In essence, Plaintiff argues that she has suffered harm because she was deprived of information that Defendant was obligated to provide by regulation.

## STANDARD OF REVIEW

Defendant raises its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1), which allows a party to move to dismiss a claim for lack of subject matter jurisdiction.  When a court lacks subject matter jurisdiction, dismissal is mandatory. Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").  Plaintiff has the burden of demonstrating jurisdiction in order to survive the Rule 12(b)(1) motion and must plead the elements of standing with specificity. *Memphis Ctr. for Indep. Living v. Woodglen Vill. Apartments*, No. 08-2121-STACGC, 2010 WL 145351, at *3 (W.D. Tenn. Jan. 8, 2010) (citations omitted).

When there is a facial challenge to standing, the court must regard all the allegations in the complaint as true. *Id.* (citations omitted).  By contrast, where a 12(b)(1) motion challenges the factual basis for standing, the court has broad discretion to consider evidence outside of the pleadings to determine whether standing exists. *See Adkisson v. Jacobs Eng'g Grp.*, 790 F.3d 641,

647 (6th Cir. 2015) (citing *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir.2014)).  A facial attack on standing challenges the legal sufficiency of the complaint, whereas a factual challenge against standing questions whether the complaint's factual assertions reflect reality.  *See Ohio Nat. Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

## ANALYSIS

### A.  The Americans with Disabilities Act

The Americans with Disabilities Act provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.  The ADA defines a public accommodation to include an "inn, hotel, motel, or other place of lodging. . ." 42 U.S.C. § 12181.  Furthermore, 28 C.F.R. § 36.302(e)(1), one of the ADA's implementing regulations, requires the following:

> **Reservations made by places of lodging**.  A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—(i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms; (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs; (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type; (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.  *Id.*

Plaintiff's opening pleading alleges that Defendant failed to list the specific accommodations available at the Colonial Inn on various third-party hotel reservations websites.  Moreover, the

Complaint alleges that these third-party websites did not allow for booking accessible rooms at all. Plaintiff states that she visited the booking websites for the purpose of assessing the accessible features at the Colonial Inn and to determine whether they met the requirements of 28 C.F.R. § 36.302(e)(1). Further, Plaintiff reviewed the websites to ascertain whether she can stay in this hotel during a trip she is planning to the area of Camden, Tennessee in July of 2022.

Given that Defendant makes a facial attack on Plaintiff's grounds for standing, the Court accepts Plaintiff's factual allegations as true. As a result, it appears that Plaintiff has established Defendant's violation of Section 36.302(e)(1). Because Plaintiff was unable to determine the accessibility accommodations available at Colonial Inn or reserve accessible rooms through its online reservations system, Defendant has run afoul of Section 36.302(e)(1). Defendant especially failed to comply with subsection (ii), where it is required that "a place of lodging shall . . . identify and describe accessible features . . . in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." Thus, Plaintiff has sufficiently shown that Defendant violated Section 36.302(e)(1) for purposes of this Motion.

### B.  Article III Standing

Although it is an initial hurdle to relief, standing was not created to stymie the judicial process. Standing serves a fundamental role in preserving the separation of powers between each body of our tripart federal government. Principally, the Founders believed in keeping distinct each body of the federal government to ensure that the ambitions of the power-hungry in a single branch would not overwhelm the whole.

> "It is agreed on all sides, that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident, that none of them ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers. It will not be denied, that power

4

is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it."  The Federalist No. 48 (James Madison).

To limit the judiciary, the Framers permitted federal courts to hear only "Cases" and "Controversies" between parties.  U.S. Const. art. III, § 2.  Stated concisely, federal courts may only pass judgement upon conflicts where each party has a concrete stake in the outcome.  Thus, courts are prohibited from issuing advisory opinions on hypothetical matters.  Allowing courts to pass judgement on non-controversies would turn the judiciary into a quasi-legislative branch.  Although some may desire a judiciary with legislative capabilities, this power would encroach upon the authority of the legislature and violate the enumerated purpose of the judiciary.  Such an accumulation of federal power in a single branch of government is precisely the circumstance our Framers hoped to avoid.  *See* The Federalist No. 51 (James Madison); *see also TransUnion v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Federal courts do not possess a roving commission to publicly opine on every legal question.").  At the core, the purpose of the federal courts is to resolve live disputes.  *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998) (quoting *Coleman v. Miller*, 307 U.S. 433, 460 (1939) (Frankfurter, J., dissenting)).  Therefore, given the substantial concerns surrounding standing, this Court weighs the standing challenge here with great care.

Fortunately, the Supreme Court has articulated the necessary components for standing.  To date, the Court has reduced the doctrine to three primary elements.  In order to survive a motion to dismiss for lack of standing, a plaintiff must demonstrate that (1) she "suffered an 'injury in fact'"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is likely "that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The question presented by Plaintiff in this case is whether a disabled person reviewing a hotel website suffers an injury in fact when the hotel does not adequately detail accessibility

5

accommodations through its online reservations service system.  Consequently, the Court's analysis focuses primarily on the injury-in-fact prong of the standing elements.  At this point, then, it is important to highlight the three prerequisites required to establish an injury in fact.  Recently, the Supreme Court emphasized these key elements in *TransUnion v. Ramirez*, stating that to show an injury in fact for standing purposes, a plaintiff must demonstrate "he suffered an injury . . . that is concrete, particularized, and actual or imminent . . . ." 141 S. Ct. at 2203 (citations omitted).  Ordinarily, each of these three elements receives separate attention.  However, the Court limits its standing discussion to the issue of concreteness because Plaintiff has failed to allege a concrete injury, rendering additional analysis unnecessary.[1]

To establish a concrete injury, the plaintiff must demonstrate that the harm suffered is "real and not abstract." *Id.* at 2204 (citations omitted).  The Court in *TransUnion* emphasized that "the alleged injury to plaintiff [should have] a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.  *Id.*  That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).  Further, Congress may play a role in defining injurious conduct.  Congress may therefore elevate injuries that were not previously recognized as adequate for standing purposes. *Spokeo*, 578 U.S. at 341 (citing *Lujan*, 504 U.S. at 578).  However, the injury-in-fact requirement is not necessarily met once a statute authorizes a party to sue. *Spokeo*, 578 U.S. at 341.  As the *Spokeo* Court notes, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*  Thus, Congress cannot arbitrarily declare certain conduct or outcomes

---

[1] The Court acknowledges that it reached a contrary conclusion in granting Plaintiffs Motion for Leave to File Amended Complaint (ECF No. 19) in *Shumway v. Mira and Jenshu, LLC*, No. 21-cv-01063 (W.D. Tenn. Oct. 15, 2021).  However, upon further reflection and deliberation, the Court now opines as set forth herein.

as constituting an injury for purposes of Article III standing; the plaintiff must still suffer a traditionally recognized harm independent of the statutory right to sue. *See Brintley v. Aeroquip Credit Union*, 936 F.3d 489 (6th Cir. 2019) (stating that a plaintiff must satisfy both statutory standing and Article III standing).

Although Plaintiff has demonstrated a regulatory violation, Plaintiff has not effectively pled an injury in fact for purposes of constitutional standing. Here, Plaintiff indicates that she has suffered "informational" harm. Resp. to Mot. to Dismiss. at 3, ECF No. 21. Plaintiff points primarily to *Havens Realty v. Coleman* as the basis for believing that informational deprivation constitutes an injury in fact for standing purposes. 455 U.S. 363 (1982). In *Havens*, two testers, one white and one black, separately visited an apartment complex to determine whether the complex was discriminating against black individuals seeking housing. *Id.* at 368. The black tester was told that no housing was available at the complex while the white tester was informed that there were available apartments. *Id.* The defendant's attempted deception violated the Fair Housing Act where it stated that it was unlawful "to represent to any person because of race, color, religion sex, or national origin that any dwelling is not available for inspection, sale, or rental when such a dwelling is in fact so available." 42 U.S.C. § 3604(d); *see also Havens Realty*, 455 U.S. at 373 (quoting the Fair Housing Act). On its face, the statute provided a right of action for the dissemination of *false* information on the basis of *race* or another protected category. The Court in *Havens* confirms this interpretation, stating "Congress has thus conferred on all '*persons*' a legal right to *truthful* information about available housing." *Id.* (emphasis added); *see also Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998) (noting that the harm alleged in *Akins* fell within the zone of interests protected by statute). In short, the statute prohibited the harm suffered—racially-motivated fraud.

7

What then, if any, is the difference between Plaintiff's claim here and that in *Havens*?  Most noteworthy is the distinction between a failure to provide information and an affirmative misrepresentation motivated by racial animus.  In contrast to Plaintiff's contention here, the statute in *Havens* did not merely grant a right to information but instead penalized the dissemination of false information for certain protected groups.  *See* 42 U.S.C. § 3604(d).  In other words, the Fair Housing Act provision punished a special form of fraud to eliminate discrimination, whereas here, Defendant simply failed to provide certain information required by an ADA regulation.  Thus, no fraud occurred.  Moreover, it is reasonable to argue that no discrimination occurred in this case, given the fact that all individuals, whether disabled or not, had access to the same information on Defendant's reservations system.  The circumstances of this case are divergent since the harms asserted in this case are quite different than in *Havens*.

Ultimately, the distinctions between *Havens* and this case are significant because the harms suffered in *Havens* have analogues in the history and traditions of our legal system.  Fraud and discrimination have long been recognized as legitimate causes of action and those who experience either have suffered injury by nature of the consequences that naturally flow from such conduct.  Yet, the deprivation of information complained of by Plaintiff in this case has no obvious analogue in the history of American courts.  On its own, failing to provide information is not ordinarily a cognizable harm.  *See Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019) ("A procedural violation of an informational entitlement does not by itself suffice to keep a claim in federal court.").  Plaintiff must assert more than simply a lack of access to information.  Further, Plaintiff was not denied the information sought, instead she simply could not access the information online.  Plaintiff could have made a phone call or sent an email to Colonial Inn to determine the adequacy of Defendant's accommodations.  At that point, had she been given false information or received

information indicating the inadequacy of the accommodations, her standing claim would be more substantial and closer to the issue in *Havens*.  It is difficult to state that Plaintiff has been deprived of information or suffered discrimination when she has made minimal effort to obtain the information of concern.  Thus, the distinctions between *Havens* and this case are significant for understanding why the outcomes are dissimilar.

On the issue of information deprivation as an injury in itself, Plaintiff further cites *Fed. Election Comm'n v. Akins*, for the proposition that information deprivation is a concrete injury for purposes of standing, but this case is also distinguishable.  524 U.S. at 12.  In *Akins*, a group of voters filed suit against the Federal Election Commission (FEC), demanding that the FEC compel a political organization to disclose its financial contributions pursuant to the Federal Election Campaign Act (FECA).  *Id.* at 16.  Prior to the suit, the FEC had determined that the political organization was not subject to FECA's financial disclosure provisions.  *Id.* at 18.  Thus, the plaintiffs asked the federal courts to review the FEC's decision.  *Id.* at 19.

The FEC raised standing concerns, arguing that plaintiffs were without right to challenge their decision because they had not suffered an injury in fact outside of the statutory right to information. *Id.*  However, the Court found this unpersuasive, concluding that "their failure to obtain relevant information—is injury of a kind that FECA seeks to address."  *Id.* at 20 (citing *Buckley v. Valeo*, 424 U.S. 1, 66–67 (1976)).  In essence, the Court found that Congress intended to provide voters with the ability to file these kinds of suits and gain access to financial information for the purpose of making political decisions.  *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).  But the Court implied that the failure to disclose information was not a harm in itself.  Instead, the lack of information caused an injury independent of the statutory violation by impeding the ability of voters to exercise their political rights.  *Id.* at 21 (noting that "the information would help them . . . evaluate candidates for

public office."); *see also Hernandez v. Caesars License Co.*, 2019 U.S. Dist. LEXIS 172456, at *7–8 (D.N.J. Oct. 4, 2019) (discussing the Article III harm caused by the failure to disclose in *Akins*).[2] Thus, it appears that the Court in *Akins* found an injury beyond the mere statutory violation caused by the failure to disclose.

In this case, Plaintiff asserts that she has suffered informational harm comparable to that in *Akins*. But unlike the plaintiffs in *Akins*, Plaintiff here has not effectively demonstrated that the failure to provide accessibility information online impacts her future acts in any manner. The lack of information in *Akins* impeded the plaintiffs' ability to exercise their voting rights—a critical and fundamental entitlement. In contrast, Plaintiff has not alleged an injury other than the inability to review accessibility information online. Thus, Plaintiff has not shown a harm beyond the violation of a regulatory mandate.

Next, the Court addresses the claim that the credit union standing cases are inapposite to the Motion at issue here. Most relevant of these is the case raised by Defendant: *Brintley v. Aeroquip Credit Union*, 936 F.3d 489. In *Brintley*, the vision-impaired plaintiff filed suit against two credit unions, claiming that she was unable to become a member due to the incompatibility of their websites with her screen reading software. *Id.* at 491. The Sixth Circuit found that the plaintiff had not alleged a concrete injury, stating "merely browsing the web, without more, isn't enough to satisfy Article III standing." *Id.* at 494. Although the *Brintley* court acknowledged that plaintiff had adequately alleged an ADA violation, the plaintiff had not shown a concrete harm. *See id.*

---

[2] Since deciding *Akins*, the Supreme Court has become more scrutinizing regarding its standing jurisprudence. As the Sixth Circuit noted in *Brintley v. Aeroquip Credit Union*, 936 F.3d 489 (6th Cir. 2019), "the Supreme Court's recent standing jurisprudence has only further 'tightened the hatches' on what qualifies as injury in fact. (citing *Vonderhaar v. Village of Evendale*, 906 F.3d 397, 401 (6th Cir. 2018); *see generally Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). Thus, to the extent *Akins* may be construed as supporting Plaintiff's position, it is likely incongruent with the Supreme Court's current standing jurisprudence.

Plaintiff notes in her brief that *Brintley* is not comparable to this case because the plaintiff in *Brintley* was not eligible under state law to become a member of either credit union nor did she indicate any meaningful interest in becoming eligible for membership. *Id.* at 492. In other words, the plaintiff was not harmed because she was not entitled to defendants' services, irrespective of the statutory violation. *See id.* To Plaintiff's credit, this distinction is significant because Plaintiff here is eligible to obtain the services of Colonial Inn and has stated that she intends to access Defendant's services in July of 2022. Am. Compl. at 4, EFC No. 17. However, the principle guiding the *Brintley* court—that a violation of an informational entitlement is not enough to establish a concrete injury— still undermines Plaintiff's position. Plaintiff in this case is eligible to be a patron and has stated an intent to use Defendant's services, but she has not effectively demonstrated that she has been impeded in her desire to use Defendant's services. As previously mentioned, there are likely other avenues that would reasonably allow Plaintiff to evaluate the sufficiency of Defendant's facility. Further, although the *Brintley* court even suggested that the plaintiff had experienced discrimination when visiting the noncompliant website, the court found this affront too attenuated to find standing. *Id.* at 494. On the issue of discrimination then, *Brintley* is certainly on point. To claim discrimination when viewing a noncompliant website is not strong enough of an accusation to support standing. Thus, the Court views *Brintley* as sufficiently analogous to guide the disposition here.

The final question is whether Congress, by authorizing regulations to effectuate its statutes, created an injury in fact for plaintiffs who are not given required information under the regulation at issue here. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 479 (3rd Cir. 2018). At times, Congress has elevated certain injuries as adequate for standing purposes where they were not previously remediable harms. *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2204–05 (2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Plaintiff argues that as a matter of purpose and

statutory construction, Congress enacted the ADA with the intent to provide standing to plaintiffs for statutory violations without imposing any additional requirements.  Yet, even if this assertion is true, as the case law demonstrates, Congress may elevate cognizable injuries to lend statutory standing where it did not previously exist, but Congress may not declare Article III standing where it does not exist.  "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation."  *Spokeo*, 578 U.S. at 341.  Thus, whether concrete harm exists under Article III is a determination left to the courts and defined by the bounds of the Constitution.  *See id.*  In this case, standing does not exist due to Plaintiff's failure to allege a concrete Article III harm.

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 18) is **GRANTED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  November 8, 2021.

12